UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BADGER SHEET METAL WORKS
OF GREEN BAY, INC.,

        Plaintiff,

v.                                  Case No. 15-C-1051

PROCESS PARTNERS, INC.,

        Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Plaintiff Badger Sheet Metal Works of Green Bay, Inc., a Wisconsin corporation located in Green Bay, Wisconsin, sued Defendant Process Partners Inc., a Michigan corporation located in Zeeland, Michigan advancing claims of breach of contract, promissory estoppel, and unjust enrichment. The action was commenced in Brown County Circuit Court, but Process Partners removed the matter to federal court. The parties are citizens of different states, and the amount in controversy exceeds $75,000. Federal jurisdiction therefore exists under 28 U.S.C. & 1332. The case is presently before the court on Process Partners' motion for summary judgment. For the reasons set forth below, Process Partners' motion will be denied.

## BACKGROUND

Process Partners, a company that designs food production processes, placed a bid to construct an Iowa food production plant in October 2013. (Defendant's Proposed Findings of Fact (DPFOF) ¶¶ 5, 12.) Part of the plant's construction included creating an egg cooker oven. (*Id.* ¶ 14.) Process Partners and Badger Sheet Metal had previously collaborated in 2011 on a similar

project which entailed constructing an oven in a different plant. (*Id.* ¶ 13.) Based on its previous dealings with Badger Sheet Metal, Process Partners contacted the company again to provide oven components for the egg cooker portion of the food production plant. (*Id.* ¶¶ 12–14.)

To better gauge the estimated total for its bid, Process Partners' lead designer Mike Raymond sent Badger's representative Paul Weyers a drawing of an oven created by another manufacturer to demonstrate the type of oven Badger would be contracted to build if Process Partners was awarded the plant construction contract. (*Id.* ¶ 15.) Weyers submitted a budgetary proposal for the oven to Raymond, which was nearly identical to the model drawing. (*Id.* ¶¶ 15–17.) Although the proposal did not contain exact specifications, it listed the price of the oven at $424,000, including labor and materials, but failed to mention whether the contract was a fixed contract or time and materials contract. (*Id.* ¶ 17.) This distinction is important: a fixed price contract allows parties to negotiate a lump sum for the work performed on a project, with the possibility of price adjustments based on changes or delays made by one party. 2 BRUNER & O'CONNOR CONSTRUCTION LAW § 6:71 (2016). A time and materials contract, in contrast, allows a contractor to be reimbursed for labor at an hourly rate that includes profit and overhead. *Id.* § 6:83.

Several months after Weyers submitted the proposal to Raymond, Process Partners was awarded the contract to build the processing plant, which prompted Raymond to send Weyers a purchase order for the oven in the amount of $400,000. (DPFOF ¶¶ 18–19, 22.) Weyers responded to the purchase order with a "Quotation Response Form" and "Order Verification" form that referenced the purchase order and set the purchase price at $400,000.11. (*Id.* ¶ 23.) The two documents created by Weyers included the language "budgetary proposal contains labor and materials" from the original budgetary proposal and added the statement "individual sections of

2

project will be bid as drawings become available." (*Id.*) It thus appears that even at this time, the parties still had not formally agreed whether they were entering into a fixed contract or time and materials contract.

Although there were inconsistencies in the purchase price, the $400,000 figure was used on multiple occasions, including all progress billing invoices sent by Badger. (*Id.* ¶ 26.) Process Partners asserts Weyers, the primary Badger contact for Process Partners, always understood the contract to be a fixed price contract, though he had represented to other Badger employees, through internal documentation containing specific phrases like "budgetary proposal" and oral communications, that the contract was for time and materials. (Pls.' Response to DPFOF ¶ 26.)

On August 26, 2014, Weyers created a spreadsheet detailing the change orders made during the construction process, which totaled $25,762.50. (DPFOF ¶¶ 42–43.) The spreadsheet listed the original contract price as $424,000 and did not mention whether the contract was calculated based on a fixed or time and materials basis. (*Id.* ¶ 43.) Weyers presented the spreadsheet to Raymond in an August 28, 2014 meeting and emailed Raymond the spreadsheet on September 3, 2014. (*Id.* ¶¶ 46–47.)

Weyers created a second spreadsheet with additional line items and presented it to Raymond on September 15, 2014. (*Id.* ¶ 49.) This second spreadsheet echoed the same information contained in the first spreadsheet but increased the change order and stated that the "project total with change order requests" equaled $457,952.91. (*Id.* ¶ 50.) During this September 15, 2014 meeting, Raymond agreed to the $457,952.91 price. (*Id.* ¶ 51.)

3

After an internal meeting at Badger on September 15, 2014, Weyers' supervisor, Samuel Thomas, informed Raymond that the contract price would increase. (*Id.* ¶ 53.) On September 16, 2014, Badger sent Raymond a third spreadsheet with an increased project total of $603,000. (*Id.* ¶ 54.) This third spreadsheet was calculated on a time and materials analysis. (*Id.*) Raymond immediately rejected the new price and instead reviewed all the change order documentation and calculations. (*Id.* ¶¶ 56–57.) Upon review, Raymond concluded an additional $6,172.51 should be added to the price agreed upon at the September 15, 2014 meeting, making the new total $464,125.42. (*Id.* ¶ 57.)

Over the next several months, Badger and Process Partners attempted to reach a resolution but did not resolve the dispute. (*Id.* ¶ 60.) In a final attempt to settle the dispute, Raymond sought to pay the remainder of the $464,125.42 Process Partners agreed to pay. (*Id.* ¶ 61.) Believing Process Partners had paid $300,000 in progress payments (rather than the actual payment of $350,000), Raymond authorized a check for $164,125.42 to be issued to Badger. (*Id.* ¶ 62.) In other words, Process Partners paid $514,125.42 for the project. (*Id.* ¶ 63.) Process Partners alleges it inadvertently overpaid $50,000 on the $464,125.42 bill. (*Id.*) Badger alleges an additional $88,874.58 is due on the contract based on the $603,000 purchase price.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On the outset, the moving party has the initial burden of proving summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925,

4

928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* For a fact to be considered "material," the fact under dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

**I. Choice of Law**

As an initial matter, the court must determine whether to apply Wisconsin or Michigan law to Process Partners' motion for summary judgment. Process Partners asserts that while Wisconsin and Michigan law are similar, the court should apply Michigan law. "Even in the absence of a 'true conflict,' . . . [the court is] still obliged to choose the applicable law." *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir. 1994). When a district court exercises diversity jurisdiction, it must apply the choice of law principles of the state in which it sits. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Therefore, Wisconsin's choice of law principles apply. Under Wisconsin law, the court must determine whether a genuine conflict exists between the laws of the respective states. *Heath v. Zellmer*, 35 Wis. 2d 578, 591, 151 N.W.2d 664 (1967). If no conflict exists, the court applies the law of Wisconsin. *See Sharp ex rel. Gordon v. Case Corp.*, 227 Wis.

2d 1, 11, 595 N.W.2d 380 (1999). The parties agree that no true conflict exists between Wisconsin and Michigan law. Therefore, the court will apply Wisconsin law.

**II. Interpretation of the Contract**

The parties dispute whether the budgetary proposal contract entered into between Badger and Process Partners is a fixed contract or a time and materials contract. Badger further argues that even if there is no dispute as to the type of contract the parties entered into, there is a genuine dispute of fact as to the total contract price. Because the court finds that a genuine issue of material fact exists regarding the type of contract the parties entered into, the court declines to address Badger's alternative argument.

Under Wisconsin law, the interpretation of a contract is a question of law. *Robins v. PSF Holdings LLC*, No. 09-CV-00930, 2012 WL 13380, at *2 (E.D. Wis. Jan. 4, 2012). Contractual interpretation rests on the parties' intent. *Id.* If a contract is unambiguous, the court must adhere to the literal interpretation of the contractual language, therefore involving a pure question of law. *Schuh Hauling, Inc. v. Land O'Lakes, Inc.*, No. 05 C 0268, 2006 WL 1431496, at *3 (E.D. Wis. May 25, 2006). If, however, the contract is ambiguous, the fact finder must evaluate the extrinsic evidence to determine the parties' intent. *CTI Sys., S.A. v. Global Finishing Sols., LLC*, No. 14-CV-744-jpd, 2016 WL 110605, at *7 (W.D. Wis. Jan. 8, 2016). Relevant extrinsic evidence includes the parties' conduct, negotiations between the parties, and all related documents. *Id.* at *6. Since summary judgment prohibits the court from deciding questions of fact, disputes involving reasonable differing interpretations of extrinsic evidence precludes granting a motion for summary judgment. *Id.* at *7.

Process Partners argues that it is entitled to summary judgment because the undisputed evidence demonstrates that it had a fixed price contract with Badger. Process Partners contends that Badger representative Weyers and Process Partners always considered the contract to be a fixed price contract. Specifically, the contract included both labor and materials as well as a clause that allowed individual sections of the project to be bid as drawings became available. The bidding clause was never exercised, however, because the drawings provided to Weyers during the creation of the budget proposal were substantially similar. Based on these contract terms and the substantially similar design, Process Partners contends it entered into a fixed price contract with Badger. In further support of its argument that this was a fixed price contract, Process Partners asserts Raymond accepted the higher original contract price of $424,000 and the second spreadsheet created by Weyers during the September 15, 2014 meeting which outlined the change orders for the project. Only after Raymond accepted this final total reflecting the change orders did Badger begin calculating the price on a time and materials basis. To remedy the dispute, Process Partners attempted to pay the remainder of the outstanding charges based on the second spreadsheet calculations and Process Partners' own review of the change orders. This attempt to settle its outstanding amount caused the company to overpay by $50,000. Because of the contractual language and dealings with Weyers, Process Partners argues that the contract was a fixed price contract and Process Partners is entitled to the $50,000 overpayment.

Conversely, Badger considers the contract to be a time and materials contract in which there was no mutual assent to the price. It asserts Weyers indicated that the project was a "budgetary proposal" on internal documentation and orally represented to his supervisor the project was a time and materials contract. Further, the contract price varied on the budgetary proposal, Quotation

7

Response Form, Order Verification Form, progress billing invoices, and change order spreadsheets. Moreover, the total amount due under Process Partners' analysis is a combination of the spreadsheet calculations created by Badger and the unilateral research on the part of Process Partners. Badger argues that the combination of Weyers' internal communications and billing documentation led it to believe that it had entered into a time and materials contract with Process Partners.

Based on the record before the court, the evidence bearing on the issue is not so one-sided as to warrant summary judgment. Indeed, a jury may ultimately conclude that the parties agreed to a fixed price contract, but it could also find that no agreement as to price was reached. Given the absence of a clear contractual provision, Weyers' own conflicting statements, and the inconsistent original contract price, I conclude that there is a genuine issue of material fact that precludes summary judgment in favor of Process Partners. Process Partners' motion for summary judgment will be therefore denied.

**CONCLUSION**

For the foregoing reasons, the court concludes that a genuine issue of material fact exists as to whether the contract between Badger Sheet Metal and Process Partners was a fixed contract or a time and materials contract.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment is **DENIED**. The Clerk is directed to set this matter on the court's calendar for further scheduling. Counsel may appear by telephone.

Dated this   13th   day of June, 2017.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
